## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AMCO INSURANCE COMPANY and ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY 1100 Locust Street, Dept. 1100 Des Moines, IA 50391 <br><br> Plaintiffs, <br><br> v. <br><br> X-CHAIR, LLC 10300 Southard Drive Beltsville, MD 20705 <br><br> Serve: State Department of Assessments & Taxation Room 801 301 West Preston Street Baltimore, MD 21201 <br><br> and <br><br> ACE BAYOU CORP. 3700 Desire Parkway New Orleans, LA 70126 <br><br> Serve: Gay Fielding 931 Daniel Street Kenner, LA 70062, <br><br> Defendants. | Case No.: 22-cv-2875 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Amco Insurance Company ("Amco") and Allied Property and Casualty

Insurance Company ("Allied") (collectively, "Plaintiffs"), and through their attorneys, and for

their Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§2201 and 2202 against Defendants, X-Chair, LLC ("X-Chair") and Ace Bayou Corp. ("Ace Bayou"), state as follows:

## STATEMENT OF THE CASE

1.     This action seeks a declaration that Amco and Allied owe no obligation to defend or indemnify X-Chair under insurance policies that Amco and Allied issued to X-Chair.

2.     Amco and Allied owe no coverage to X-Chair with regard to the lawsuit captioned *Ace Bayou Corp. v. X-Chair, LLC*, United States District Court for the District of Minnesota, case no. 0:22-cv-00525, filed in the Minnesota District Court ("Underlying Action"). A copy of the Complaint in the Underlying Action is attached as Exhibit 1.

## PARTIES

3.     Amco is an insurance company duly organized and existing under the laws of Iowa with its principal place of business in Des Moines, Iowa, and is therefore a citizen of Iowa.

4.     Allied is an insurance company duly organized and existing under the laws of Iowa with its principal place of business in Des Moines, Iowa, and is therefore a citizen of Iowa.

5.     X-Chair is a Delaware limited liability company with its principal place of business in Maryland. The sole member of X-Chair is Anthony Mazlish, who is a natural person that is domiciled in Maryland, and thus, X-Chair is a citizen of Maryland.

6.     Ace Bayou is a Louisiana corporation with its principal place of business in Minnesota and is therefore a citizen of Louisiana and Minnesota.

7.     Ace Bayou is joined herein solely as an interested party, and Amco and Allied do not assert any claims against Ace Bayou in this Complaint.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as Plaintiffs Amco and Allied are citizens Iowa and Defendants are citizens of Maryland, Louisiana, and Minnesota.

9.     At issue in this action is whether Amco and Allied owe a defense and/or indemnity obligation to X-Chair for the Underlying Action.

10.     The claims for which the Plaintiff in the Underlying Action seek damages, and for which X-Chair seeks coverage, include compensatory damages, actual damages, statutory damages, punitive and exemplary damages, attorney's fees and other costs of suit in an amount in excess of $75,000. *See* 28 U.S.C. § 1332(a).

11.     The defense costs that X-Chair will incur in defending against the Underlying Action are also at issue in this declaratory judgment action.

12.     Venue is proper in this District because the policies issued by Amco and Allied were issued to X-Chair in this District, the injury at issue in the Underlying Action allegedly occurred in this District, and upon information and belief, Ace Bayou conducts business in this District.

## ACE BAYOU DEMAND LETTERS

13.     On January 30, 2018, Ace Bayou's attorney (Michael Bondi of Moss & Barnett) issued a letter to X-Chair stating that it owns certain registered trademarks, the "X Rocker marks" and provided a copy of Ace Bayou's trademark registration certificates. A copy of the January 30, 2018 letter and its attachment are attached as Exhibit 2.

14.     Ace Bayou asserts that it has been using the mark "X Rocker" as early as 2005. The letter further states that X-Chair registered the mark "X-Chair" with the U.S. Patent & Trademark Office ("USPTO") and has been publicly using this mark on March 21, 2016.

15.     Ace Bayou argues that because both marks are similar and that they are being used on chairs, Ace Bayou requested X-Chair to change the stylization of the "X-Chair" mark in order to prevent customer confusion.

16.     On April 6, 2018, Ace Bayou's attorney issued the same January 30, 2018 letter to X-Chair regarding the registered marks. A copy of the April 6, 2018 letter and its attachment are attached as Exhibit 3.

17.     On April 10, 2018, X-Chair's attorney (Jeffrey Lindenbaum of Collen IP) sent a letter to Mr. Bondi acknowledging receipt of the April 6, 2018 letter. A copy of the April 10, 2018 letter is attached as Exhibit 4.

18.     Mr. Lindenbaum wrote that the use of X-Chair's mark would not cause customer confusion because Ace Bayou's mark is used on gaming chairs whereas X-Chair's mark is used on office chairs.

19.     He also argued that the marks are not similar and therefore there was no need to change the stylization of X-Chair's marks. He also stated that X-Chair was willing to agree to the following terms:

a.  It will not challenge Ace Bayou's rights in the XRocker mark;
b.  It will not use the word "Rocker" with its mark;
c.  It will always use its mark with a hyphen, namely "X-CHAIR;"
d.  It will not use the color orange as part of its mark;
e.  It will not use the stylized X that is used by Ace Bayou; and
f.  In the unlikely event a consumer exhibits any confusion, it will notify Ace Bayou and work cooperatively with Ace Bayou to cure the confusion.

20.     Neither Amco nor Allied were notified of Ace Bayou's previous demands until after the Underlying Action was filed and tendered.

**UNDERLYING ACTION**

21.     On March 2, 2022, Ace Bayou filed a complaint against X-Chair. Ace Bayou alleges that it has been using the mark "X" with its furniture, gaming chairs, and gaming desks as early as August 2005 and with its gaming headphones, computer keyboards, computer mice as early as August 2018.

22.     Ace Bayou alleges that on November 26, 2019, the USPTO issued U.S. Reg. No. 5,917,520 to Ace Bayou for the standard character mark "X." Ace Bayou alleges that X-Chair LLC ("X-Chair") also uses the "X" symbol on its chair products, which is identical or similar to Ace Bayou's symbol.

23.     Ace Bayou contends that X-Chair intended to deceive consumers by using the same symbol as that of Ace Bayou's symbol.

24.     Ace Bayou also alleges that X-Chair has been promoting the sale of its products with the "X" mark on its website.

25.     In Count I- Violation of Lanham Act by Use of False Designation in Interstate Commerce 15 U.S.C. § 1125 alleges that X-Chair violated the Lanham Act by false designation or origin and false or misleading description and representation of fact.

26.     Count II- Trademark Infringement in Violation of Minn. Stat.§ 333.28 alleges X-Chair sold and continues to sell and advertise products with marks similar to that of Ace Bayou's registered marks, which is likely to cause consumer confusion.

27.     Count III- Common Law Trademark Infringement alleges that X-Chair is acting in an intentional and wanton manner to deceive the public by using Ace Bayou's mark thereby causing confusion in the marketplace.

28.     Count IV- Unfair Competition by Infringement of Common Law Rights alleges that X-Chair is selling confusingly similar products, which constitutes unfair competition and an

infringement of Ace Bayou's rights in its mark. Ace Bayou further alleges that X-Chair intended to pass off its products as Ace Bayou's products.

29.     Count V- Injunctive Relief alleges that money alone cannot remedy the damages that Ace Bayou incurred as a result of X-Chair's actions.

30.     Count VI- Violation of Lanham Act by Infringement of Trademark Registrations alleges that X-Chair has infringed on Ace Bayou's federal trademark rights and registrations in violation of the Lanham Act.

31.     Ace Bayou seeks the following relief: (1) grant an injunction against X-Chair, enjoining it from using Plaintiff's marks; (2) under federal and state law, order X-Chair to destroy all materials that bear Ace Bayou's marks; (3) require X-Chair to account to Ace Bayou for any and all profits derived from X-Chair's sale of goods that used Ace Bayou's marks; (4) award compensatory damages to Ace Bayou; (5) award statutory damages to Ace Bayou; (6) award treble the amount of actual damages to Ace Bayou; (7) award punitive and exemplary damages against X-Chair; (8) award court costs; (9) award reasonable attorney fees; (10) declare Ace Bayou has the exclusive right to use its marks; and (11) any other relief the court deems proper.

## INSURANCE POLICIES

32.     Amco issued to Healthy Back the following Commercial General Liability Policies bearing policy number: (1) ACP GLAO 3018080512, effective June 1, 2016 to June 1, 2017 ("16-17 Policy"); (2) ACP GLAO 3028080512, effective June 1, 2017 to June 1, 2018 ("17-18 Policy"); and (3) ACP GLAO 3038080512, effective June 1, 2018 to June 1, 2019 ("18-19 Policy").

33.     The 16-17, 17-18, and 18-19 Policies are each subject to limits of liability of $1 million each occurrence, $1 million personal and advertising injury limit, and $2 million general aggregate limit.

34.     X-Chair was added as a named insured on September 23, 2016 via endorsement in the 16-17 Policy.

35.     X-Chair is listed as a named insured under the 17-18 and 18-19 Policies.

36.     Allied issued to Healthy Back a Commercial General Liability Policy bearing policy number ACP GLPO 3048080512, effective June 1, 2019 to June 1, 2020 ("19-20 Policy").

37.     The 19-20 Policy provides limits of liability of $1 million each occurrence, $1 million personal and advertising injury limit, and $2 million general aggregate limit.

38.     X-Chair is listed as a named insured under the 19-20 Policy.

39.     The 16-17, 17-18, 18-19 and 19-20 Policies will be collectively referred to as the "Primary Policies." The Primary Policies are attached hereto as Exhibit 5.

40.     The Primary Policies provide, in part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**…**

**SECTION I- COVERAGES**

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

…

7

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    …

    b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

    **a.  Knowing Violation Of Rights Of Another**
    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    **b.  Material Published With Knowledge Of Falsity**

    "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

    **c.  Material Published Prior To Policy Period**

    "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

…

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

*See* Exh. 5, pp. 17-23.

41.    The Supplementary Payments- Coverages A and B provides:

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
    …
    e.  All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.
    …

*Id*. at p. 24.

42.    Section IV - Commercial General Liability Conditions provides:

2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit

    a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
        (1) How, when and where the "occurrence" or offense took place;
        (2) The names and addresses of any injured persons and witnesses; and
        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
    …

9

*Id.* at p. 27.

43.     Section V- Definitions provides:

**1.**  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
   a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and
   b.  Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

   …

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, shock, fright or death resulting from any of these at any time.[1]

   …

**13.** "Occurrence" means an accident. Including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   a.  False arrest, detention or imprisonment;
   b.  Malicious prosecution;
   c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

---

[1] The Primary Policies contain various editions of the Commercial General Liability Coverage Enhancement Endorsement Including Medical Payments (form- CG 72 12 12 14 and CG 72 12 12 16) that amended the definition of "bodily injury." *See* Exh. 5, p. 54.

f.  The use of another's advertising idea in your "advertisement"; or

g.  Infringing upon another's copyright, trade dress

h.  or slogan in your "advertisement".

…

**17.** "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

*Id*. at pp. 29-31.

## COVERAGE CORRESPONDENCE

44.     On or about May 11, 2022, Amco and Allied sent a coverage position letter to X-Chair.

45.     In the May 11, 2022 coverage position letter, Amco and Allied agreed to defend X-Chair pursuant to a full reservation of rights, including but not limited to the right to seek reimbursement of defense costs in the event it was determined no coverage was afforded for the Underlying Action.

## COUNT I
### Coverage A of the Primary Policies Does Not Provide

### Coverage For The Underlying Action

46.     Amco and Allied incorporate paragraphs 1 through 45 as though fully set forth herein.

47.     The Insuring Agreement of Coverage A in the Primary Policies states Amco and Allied will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.

48.     "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including mental anguish, mental injury, shock, fright or death resulting from any of these at any time."

49.     "Property damage" is defined as physical injury to tangible property, including all resulting use of that property, or loss of use of tangible property that is not physically injured.

50.     The Underlying Action does not seek damages because of "bodily injury" or "property damage" as defined by the Primary Policies.

51.     Because the Underlying Action does not seek damages because of "bodily injury" or "property damage", no coverage is owed by Amco and Allied under Coverage A of the Primary Policies.

WHEREFORE, Amco and Allied respectfully requests that this Honorable Court find and declare as follows:

  a.     The Underlying Action does not seek damages because of "bodily injury" or "property damage";

  b.     Amco and Allied has no duty under Coverage A of the Primary Policies to defend or indemnify X-Chair for the claims asserted in the Underlying Action; and

c.   Any other relief that the Court deems proper under the facts and circumstances, including Amco and Allied's costs incurred herein.

**COUNT II**
**The Underlying Action Does Not Seek Damages**
**Because of "Personal and Advertising Injury"**

52.   Amco and Allied incorporate paragraphs 1 through 51 above as though fully set forth herein.

53.   Coverage B of the Primary Policies provides, in part, that Amco and Allied will pay those sums the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the insurance applies.

54.   "Personal and advertising injury" is defined as injury, including consequential bodily injury, arising out of one or more of the following offenses: (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication, in any manner that slanders or libels a person or organization that disparages a person's or organization's good, products or services; (e) oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising idea in your "advertisement"; or (g) infringing upon another's copyright, trade dress or slogan in your "advertisement."

55.   "Advertisement" is defined as a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

56.     The Underlying Action seeks the following relief: (1) grant an injunction against X-Chair, enjoining it from using Ace Bayou's marks; (2) under federal and state law, order X-Chair to destroy all materials that bear Ace Bayou's marks; (3) require X-Chair to account to Ace Bayou for any and all profits derived from X-Chair's sale of goods that used Ace Bayou's marks; (4) award compensatory damages to Ace Bayou; (5) award statutory damages to Ace; (6) award treble the amount of actual damages to Ace Bayou; (7) award punitive and exemplary damages against X-Chair; (8) award court costs; (9) award reasonable attorney fees; (10) declare Ace Bayou has the exclusive right to use its marks; and (11) any other relief the court deems proper.

57.     Because the Underlying Action does not seek damages because of "personal and advertising injury," Amco and Allied owe no obligation to defend or indemnify X-Chair with respect to the Underlying Action under Coverage B.

WHEREFORE, Amco and Allied respectfully requests that this Honorable Court find and declare as follows:

a.      The Underlying Action does not allege damages because of "personal and advertising injury";

b.      Amco and Allied have no duty under Coverage B of the Primary Policies to defend or indemnify X-Chair against the Underlying Action; and

c.      Any other relief that the Court deems proper under the facts and circumstances, including Amco and Allied's costs incurred herein.

**COUNT III**
**Exclusion a. of Coverage B., Knowing Violation Of Rights Of Another,**
**Precludes Coverage For Underlying Action**

58.     Amco and Allied incorporate paragraphs 1 through 57 as though fully set forth herein.

59.     Exclusion a. of Coverage B in the Primary Policies precludes coverage for "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'".

60.     The Underlying Action contains allegations of trademark infringement, unfair competition, and other Lanham Act violations—false designation or origin and false or misleading description and representation of fact—arising from X-Chair's alleged use of a mark that is similar to Ace Bayou's mark.

61.     The Underlying Action alleges that X-Chair knowingly violated Ace Bayou's exclusive right to use its registered marks, intended to deceive, and intended to pass off its product as Ace Bayou's products.

62.     To the extent it is determined that damages because of "personal and advertising injury" that occurred during the Primary Policies' policy periods have been alleged, such damages are precluded from coverage as the "personal and advertising injury" was caused at the direction of X-Chair and with knowledge it would violate the rights of another and inflict "personal and advertising injury".

WHEREFORE, Amco and Allied respectfully requests that this Honorable Court find and declare as follows:

   a.     The Underlying Action seeks damages because of "personal and advertising injury" caused at the direction of X-Chair and with knowledge that it would violate the rights of another and inflict "personal and advertising injury";

b.      Exclusion a., Knowing Violation Of Rights Of Another, of
Coverage B in the Primary Policies precludes coverage for
the Underlying Action;

c.      Amco and Allied owe no duty to defend or indemnify X-
Chair in the Underlying Action under the Primary Policies;
and

d.      Any other relief that the Court deems proper under the facts
and circumstances, including Amco and Allied's costs
incurred herein.

**COUNT IV**
**Exclusion b. of Coverage B., Material Published With Knowledge Of Falsity, Precludes**
**Coverage For Underlying Action**

63.     Amco and Allied incorporate paragraphs 1 through 62 as though fully set forth
herein.

64.     Exclusion b. of Coverage B in the Primary Policies precludes coverage for
"'[p]ersonal and advertising injury' arising out of oral or written publication, in any manner, of
material, if done by or at the direction of the insured with knowledge of its falsity."

65.     Ace Bayou alleges that X-Chair acted in an intentional and wanton manner in order
to deceive the public by using Ace Bayou's mark thereby causing confusion in the marketplace.

66.     To the extent it is determined that damages because of "personal and advertising
injury" that occurred during the Primary Policies' policy periods have been alleged, such damages
are precluded from coverage as the "personal and advertising injury" arising out of oral or written
publication of material if done at the direction X-Chair with knowledge of its falsity.

WHEREFORE, Amco and Allied respectfully requests that this Honorable Court find and declare as follows:

      a.      The Underlying Action seeks damages because of "personal and advertising injury" arising out of oral or written publication done by or at the direction of the insured with the knowledge of its falsity;

      b.      Exclusion b., Material Published With Knowledge Of Falsity, of Coverage B in the Primary Policies applies to preclude coverage for the Underlying Action;

      c.      Amco and Allied owe no duty to defend or indemnify X-Chair in the Underlying Action under the Primary Policies; and

      d.      Any other relief that the Court deems proper under the facts and circumstances, including Amco and Allied's costs incurred herein.

## COUNT V
### Exclusion c. of Coverage B., Material Published Prior To Policy Period, Precludes Coverage For Underlying Action

67.     Amco and Allied incorporate paragraphs 1 through 66 as though fully set forth herein.

68.     Exclusion c. of Coverage B in the Primary Policies precludes coverage for "'[p]ersonal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period."

69.     Ace Bayou alleges that X-Chair used an "X" symbol on its products that is identical to Ace Bayou's symbol.

70.     According to Ace Bayou's January 30, 2018 letter, X-Chair has been publicly using the X-Chair mark since March 21, 2016, which is prior to the inception of the 16-17 Policy. To the extent it is determined that damages because of "personal and advertising injury" that occurred during the Primary Policies' policy periods have been alleged, no coverage exists for "personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of any respective policy period of the Primary Policies.

WHEREFORE, Amco and Allied respectfully requests that this Honorable Court find and declare as follows:

a.      To extent oral or writing publication of material whose publication took place before the beginning of any respective policy period, Exclusion c., Material Published Prior To Policy Period, in Coverage B of the Primary Policies precludes coverage the Underlying Action;

b.      Amco and Allied owe no duty to defend or indemnify X-Chair in the Underlying Action under the Primary Policies for damages because of "personal and advertising injury" arising out of the oral or written publication of materials whose publication took place prior to the beginning of any respective Primary Policy's policy period; and

18

c. Any other relief that the Court deems proper under the facts and circumstances, including Amco and Allied's costs incurred herein.

**COUNT VI**
**Exclusion i. of Coverage B., Infringement Of Copyright, Patent, Trademark Or Trade Secret, Precludes Coverage For Underlying Action**

71. Amco and Allied incorporate paragraphs 1 through 70 as though fully set forth herein.

72. Exclusion i. of Coverage B in the Primary Policies ("IP Exclusion") precludes coverage for "'[p]ersonal and advertising injury' arising out of the infringement of copyright patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement'".

73. In the Underlying Action, Ace Bayou complains that X-Chair improperly used an "X" symbol on its chair products that is identical to Ace Bayou's registered trademark.

74. In the Underlying Action, Counts II, III, and VI also specifically allege claims for trademark infringement.

75. The Underlying Action solely seeks damages arising out of X-Chair's infringement of Ace Bayou's trademark.

76. To the extent it is determined that damages because of "personal and advertising injury" that occurred during the Primary Policies' policy periods have been alleged, such damages are precluded from coverage as any "personal and advertising injury" arose out of X-Chair's alleged infringement of Ace Bayou's trademark.

77.     Amco and Allied do not owe any duty to defend or indemnify X-Chair against the Underlying Action because the Intellectual Property Exclusion applies to preclude coverage.

WHEREFORE, Amco and Allied respectfully requests that this Honorable Court find and declare as follows:

        a.     Exclusion i., Infringement of Copyright, Patent, Trademark or Trade Secret, of Coverage B in the Primary Policies applies to preclude coverage for the Underlying Action;

        b.     Amco and Allied owe no duty to defend or indemnify X-Chair in the Underlying Action under the Primary Policies; and

        c.     Any other relief that the Court deems proper under the facts and circumstances, including Amco and Allied's costs incurred herein.

## COUNT VII
### No Coverage for Attorney's Fees Under
### Supplementary Payments-Coverages A and B

78.     Amco and Allied incorporate paragraphs 1 through 77 as though fully set forth herein.

79.     The Supplementary Payments- Coverages A and B in the Primary Policies provides that "[Amco and Allied] will pay, with respect to any claim [they] investigate or settle, or any 'suit' against an insured [they] defend: [a]ll court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured."

80.     The Underlying Action seeks costs and attorney's fees.

81.     Attorneys' fees or attorneys' expenses taxed against X-Chair do not constitute as damages because of "personal and advertising injury."

82.     For this reason, no coverage is provided for attorneys' fees or attorneys' expenses taxed against X-Chair under Section 1.e of Supplementary Payments- Coverage A and B.

WHEREFORE, Amco and Allied respectfully requests that this Honorable Court find and declare as follows:

a.     No coverage is provided for attorneys' fees or attorneys' expenses taxed against X-Chair under Section 1.e of Supplementary Payments-Coverage A and B in the Primary Policies; and

b.     Any other relief that the Court deems proper under the facts and circumstances, including Amco and Allied's costs incurred herein.

Plaintiffs Amco Insurance Company ("Amco") and Allied Property and Casualty Insurance Company respectfully request that the Court enter judgment as set forth above.

*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward (04586)
Downs Ward Bender Herzog & Kintigh, P.A.
11350 McCormick Road
Executive Plaza 3, Suite 400
Hunt Valley, MD 21031
410-584-2800
mward@downs-ward.com